1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRIAN JOSEPH McMONAGLE,                      No.  2:11-cv-2115 GGH P

12                  Petitioner,

13          v.                                     ORDER

14   DON L. MEYER, Chief Probation Officer,
     Sacramento County,
15
                     Respondent.
16

17   <u>INTRODUCTION</u>

18          Petitioner was convicted by a jury of misdemeanor driving under the influence of alcohol

19   (Cal. Veh. Code § 23152(a) and driving with a blood alcohol level of .08% or more (Cal. Veh.

20   Code § 23152(b)), and was sentenced to jail time and probation.  Petitioner, represented by

21   counsel, now proceeds with an application for a writ of habeas corpus pursuant to 28 U.S.C. §

22   2254.

23          The petition, filed August 10, 2011, raises the following claim: denial of the right to

24   confrontation when the trial court allowed the state to use in evidence a report whose author was

25   not available to testify at petitioner's trial, and that petitioner was prejudiced by the state's use of

26   the report, resulting in a conviction for driving under the influence.  <u>See</u> ECF No. 1–1.  Petitioner

27   further argues that the state court erred in finding that admission of the report was harmless error

28   since the evidence in the record, other than the report, was insufficient to sustain the conviction.

1  Id.  Upon careful consideration of the record and the applicable law, the undersigned denies

2  petitioner's application for habeas corpus relief.

3  BACKGROUND

4        On November 21, 2008, a jury found petitioner guilty of violating: (1) section 23152(a) of

5  the California Vehicle Code, willfully and unlawfully driving a vehicle while under the influence

6  of an alcoholic beverage; and (2) section 23152(b) of the California Vehicle Code, willfully and

7  unlawfully driving a vehicle while having a 0.08% or more by weight of alcohol in his blood.

8  See ECF No. 12 filed in conjunction with motion to dismiss; Lodged Doc. No. 1 at 258.  The jury

9  also found true the additional allegation that petitioner did willfully and unlawfully drive a motor

10  vehicle with a concentration of alcohol in his blood of 0.15% or more by weight, within the

11  meaning of section 23578 of the California Vehicle Code. Id.

12        Petitioner admitted a prior conviction as to each count, see id. at 260–61, and was

13  sentenced to summary probation for three years, and to 15 days in jail.  Id. at 267–68.

14        Petitioner appealed his conviction to the Appellate Division of the Superior Court.  See

15  ECF No. 1, Application for Writ of Habeas Corpus, at 2.  On December 18, 2009, in light of new

16  Supreme Court law governing the introduction of testimony in support of blood alcohol lab

17  results, the Appellate Division reversed the judgment as to petitioner's conviction for driving with

18  a blood level in excess of 0.08%, and affirmed the conviction for driving under the influence of

19  alcohol:

20        After [petitioner's] trial, the United States Supreme Court found that
       lab certificates analyzing drugs and prepared for trial are
21        "testimonial" under Crawford v. Washington, (2004) 541 U.S. 36,
       124 S.Ct. 1354, 158 L.Ed.2d 177, and violate criminal defendants'
22        Confrontation Clause rights if admitted over timely objection, and
       without testimony from the forensic analyst who conducted the
23        tests, unless the analyst was unavailable, and defendant had a prior
       opportunity   for   cross-examination.   (Melendez–Diaz   v.
24        Massachusetts (2009), 557 U.S. ——, 129 S.Ct. 2527, 2532, 174
       L.Ed.2d 314).

25
       The California Supreme Court has granted review, and is currently
26        considering granting review in several Court of Appeal cases
       addressing whether Melendez–Diaz affects People v. Geir (2007)
27        41 Cal.4th 555, 61 Cal.Rptr.3d 580, 161 P.3d 104, which authorizes
       an analyst's supervisor to testify about lab results, in place of the lab
28        analyst who conducted the tests and obtained the results. Here, the

2

record on appeal establishes that over trial counsel's timely Confrontation Clause objections, the trial court admitted [petitioner's] blood alcohol lab report, and testimony regarding the lab results. However, the analyst who tested [petitioner's] blood did not testify at trial. Instead, the analyst's supervisor, who did not observe the analyst as she tested [petitioner's] blood, testified. The People claimed that the analyst who tested [petitioner's] blood was unavailable because she had moved to another state. However, it was undisputed that [petitioner] had not had the opportunity to cross-examine her. And, because the People offered the lab report and results into evidence, the Confrontation Clause imposed the burden on the People to present its witnesses, not on the defendant to bring those adverse witnesses into court. (Melendez–Diaz, supra, 129 S.Ct. 2540.) As such, the panel finds that the lab report and the results should not have been admitted into evidence.

[Petitioner] did not perform any field sobriety tests. His blood alcohol concentration was therefore significant evidence in established that his blood alcohol exceeded .08%. Because the lab result evidence was admitted over [petitioner's] timely confrontation clause objections, the judgment is reversed as to his conviction for violating vehicle Code section 23152(b), and as to the high blood level alcohol allegation.

However, after considering all the evidence at trial, the panel finds that there was overwhelming evidence that [petitioner] drove while intoxicated. For instance, [petitioner] stopped abruptly and irregularly for a red light, drove abnormally slow, turned abruptly, smelled of alcohol, mumbled, admitted consuming alcohol, had red, watery eyes, was slow and unsteady on his feet, and had difficulty walking. In addition, the criminalist, an expert, testified that such symptoms are consistent with intoxication. Therefore, after careful consideration of the record, the Panel finds that with regard to [petitioner's] conviction for violating Vehicle Code section 23152(a), the error in admitting the blood test results was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.) As such, the judgment is affirmed as to [petitioner's] conviction for violating vehicle Code section 23152(a).

ECF No. 32, Lodged Doc. No. 2 filed in conjunction with Answer.

On January 19, 2010, the appellate division denied petitioner's request for certification of the matter to the court of appeal. See ECF No. 1 at 3. On February 11, 2010, the Court of Appeal, Third Appellate Division, denied petitioner's request for a transfer of the matter to the Court of Appeal under California Rule of Court 8.1008. See id.; see also ECF No. 12 filed in conjunction with motion to dismiss, Lodged. Doc. No. 3.

On April 7, 2010, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which petition was denied on June 17, 2010. See ECF No. 12 filed in

3

conjunction with motion to dismiss, Lodged Doc. Nos 4, 5. On August 9, 2011, petitioner filed his federal petition through counsel. (ECF No. 1.) On January 30, 2012, respondent's motion to dismiss the petition as untimely was granted and the petition was dismissed. (ECF No. 13.) On September 10, 2014, the Ninth Circuit Court of Appeals reversed and remanded. (ECF No. 21.) However, the case was taken en banc by the Ninth Circuit which issued its decision remanding the case to the district court by decision of October 6, 2015. McMonagle v. Meyer, 802 F.3d 1093 (9th Cir. 2015). The mandate was not issued until November 9, 2015. (ECF No. 25.) After briefing, the matter was submitted on April 26, 2016.

DISCUSSION[1]

AEDPA Standards and De Novo Review

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) (citing Greene v. Fisher, —— U.S. —— –, ——, 132 S.Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) (citing

---

[1] Petitioner has filed objections to the documents lodged by respondent, claiming they are over-inclusive and do not replicate the record before the Appellate Division of the Sacramento Superior Court. (ECF No. 33.) Respondent filed an amended response to the objections which apologizes and sufficiently explains why the documents might be over-inclusive. (ECF No. 35.) This response is adequate. The undersigned finds no reason to strike any of the over-inclusive documents, and has not considered any irrelevant documents.

Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495 (2000)).  Circuit precedent may not be

"used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal

rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, ⎯⎯ U.S. ⎯⎯, ⎯⎯,

133 S.Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 132 S.Ct. 2148,

2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely

accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be

accepted as correct.  Id.

 A state court decision is "contrary to" clearly established federal law if it applies a rule

contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640, 123 S.Ct.

1848 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

case.[2]  Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003); Williams, 529 U.S. at 413;

Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004).  In this regard, a federal habeas court "may

not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro

v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933 (2007); Lockyer, 538 U.S. at 75 (it is "not

enough that a federal habeas court, in its independent review of the legal question, is left with a

'firm conviction' that the state court was 'erroneous.' ").  "A state court's determination that a

---

[2]  The undersigned also finds that the same deference is paid to the factual determinations of state courts.  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir.2004)).  It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination.  A petitioner must show clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

1   claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

2   the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct.

3   770 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004)).[3]

4   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

5   must show that the state court's ruling on the claim being presented in federal court was so

6   lacking in justification that there was an error well understood and comprehended in existing law

7   beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

8        The court looks to the last reasoned state court decision as the basis for the state court

9   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If

10  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

11  previous state court decision, this court may consider both decisions to ascertain the reasoning of

12  the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

13  "[Section] 2254(d) does not require a state court to give reasons before its decision can be

14  deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Rather, "[w]hen

15  a federal claim has been presented to a state court and the state court has denied relief, it may be

16  presumed that the state court adjudicated the claim on the merits in the absence of any indication

17  or state-law procedural principles to the contrary." Id. at 784-85. This presumption may be

18  overcome by a showing "there is reason to think some other explanation for the state court's

19  decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct.

20  2590 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims

21  but does not expressly address a federal claim, a federal habeas court must presume, subject to

22  rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ⸻ U.S. ⸻

23  –, ⸻, 133 S.Ct. 1088, 1091 (2013).

24        When it is clear, however, that a state court has not reached the merits of a petitioner's

25  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

26

27  [3] "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, 562 U.S. at 101, citing Williams v. Taylor,

28  529 U.S. 362, 410, 120 S.Ct. 1495 (2000).

1    habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

2    F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

3            The state courts need not have cited to federal authority, or even have indicated awareness

4    of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362,

5    365 (2002).  Where the state court reaches a decision on the merits but provides no reasoning to

6    support its conclusion, a federal habeas court independently reviews the record to determine

7    whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

8    Thompson, 336 F.3d 848, 853 (9th Cir.2003).  "Independent review of the record is not de novo

9    review of the constitutional issue, but rather, the only method by which we can determine whether

10   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

11   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

12   reasonable basis for the state court to deny relief."  Harrington, 562 U.S. at 98.

13           A summary denial is presumed to be a denial on the merits of the petitioner's claims.

14   Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012).  While the federal court cannot analyze

15   just what the state court did when it issued a summary denial, the federal court must review the

16   state court record to determine whether there was any "reasonable basis for the state court to deny

17   relief."  Harrington, 562 U.S. at 98.  This court "must determine what arguments or theories ...

18   could have supported, the state court's decision; and then it must ask whether it is possible

19   fairminded jurists could disagree that those arguments or theories are inconsistent with the

20   holding in a prior decision of [the Supreme] Court."  Id. at 786.  "Evaluating whether a rule

21   application was unreasonable requires considering the rule's specificity.  The more general the

22   rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.

23   Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of

24   federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme

25   Court has cautioned that "even a strong case for relief does not mean the state court's contrary

26   conclusion was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166

27   (2003).

28   ////

7

1   The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the

2   state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) (quoting

3   Harrington, 562 U.S. at 98).

4   Applicable Law – Sixth Amendment

5   The Sixth Amendment to the United States Constitution grants a criminal defendant the

6   right "to be confronted with the witnesses against him." U.S. Const. amend. VI.  "The 'main and

7   essential purpose of confrontation is to secure for the opponent the opportunity of cross-

8   examination.'" Fenenbock v. Director of Corrections for California, 692 F.3d 910, 919 (9th

9   Cir.2012) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431 (1986)). The

10  Confrontation Clause applies to the states through the Fourteenth Amendment. Pointer v. Texas,

11  380 U.S. 400, 406, 85 S.Ct. 1065 (1965).

12  As recognized by the Ninth Circuit Court of Appeals, in 2004 the United States Supreme

13  Court held that "a defendant's Confrontation Clause rights are violated by the admission of

14  testimonial statements of a witness who did not appear at trial unless he was unavailable to

15  testify, and the defendant had ... a prior opportunity for cross-examination." United States v.

16  Vera, 770 F.3d 1232, 1237 (9th Cir.2014) (quoting Crawford v. Washington, 541 U.S. 36, 53–54,

17  124 S.Ct. 1354 (2004)).  The Crawford rule applies only to hearsay statements that are

18  "testimonial" in nature and does not bar the admission of non-testimonial hearsay statements.

19  Crawford, 541 U.S at 42, 51, 68.  See also Whorton v. Bockting, 549 U.S. 406, 420, 127 S.Ct.

20  1173 (2007) ("the Confrontation Clause has no application to" an "out-of-court nontestimonial

21  statement.")  "Nevertheless, an expert witness may offer opinions based on such inadmissible

22  testimonial hearsay, as well as any other form of inadmissible evidence, if 'experts in the

23  particular field would reasonably rely on those kinds of facts or data in forming an opinion on the

24  subject.'" Vera, 770 F.3d at 1237 (quoting Fed.R.Evid. 703).  See also Lopez v. Horel, Civ. No.

25  07–4169, 2011 WL 940054, at *11 (C.D. Cal. Jan. 19, 2011) ("Thus, Crawford does not

26  undermine the established rule that experts can testify to their opinions on relevant matters and

27  may relate the information and sources upon which they rely in forming those opinions.") (citing

28  Ortiz v. Tilton, Civ. No. 06–1752, 2008 WL 2543440, at *14, 16 (S.D.Cal. May 5, 2008), report

8

1    and recommendation adopted by, 2009 WL 1796537 (S.D.Cal. Jun.23, 2009)).

2          Although the Supreme Court in Crawford declined to provide a comprehensive definition

3    of the term "testimonial," it did state that "[s]tatements taken by police officers in the course of

4    interrogations are ... testimonial under even a narrow standard."  Crawford, 541 U.S. at 52.  The

5    court also provided the following "formulations" of a "core class" of testimonial statements: (1)

6    "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits,

7    custodial examinations, prior testimony that the defendant was unable to cross-examine, or

8    similar pretrial statements that declarants would reasonably expect to be used prosecutorially;"

9    (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits,

10   depositions, prior testimony, or confessions;" and (3) "statements that were made under

11   circumstances which would lead an objective witness reasonably to believe that the statement

12   would be available for use at a later trial."  Id. at 51–52.

13         More than five years after Crawford was decided, in Melendez–Diaz v. Massachusetts,

14   557 U.S. 305, 129 S.Ct. 2527 (2009), the Supreme Court held that "a forensic laboratory report

15   ranked as testimonial for purposes of the Confrontation Clause."  Flourney v. Small, 681 F.3d

16   1000, 1005 (9th Cir.2012.  Specifically, the Supreme Court in Melendez–Diaz extended the

17   reasoning in Crawford to sworn "certificates of analysis" which confirmed that the substance

18   seized from the defendant was cocaine.  The Supreme Court held that a sworn certificate of

19   analysis was "testimonial" and could not be admitted into evidence absent the testimony of the

20   person who performed the tests.  Melendez–Diaz, 557 U.S. at 318.  The Supreme Court rejected

21   the argument that such certificates were business records and therefore admissible pursuant to the

22   business records exception to the hearsay rule.  Id. at 321.

23   ANALYSIS

24         Before addressing petitioner's claim under the Confrontation Clause, this court must

25   determine in this particular case what constitutes "clearly established Federal law, as determined

26   by the Supreme Court of the United States," for purposes of AEDPA review.  See Lockyer, 538

27   U.S. at 71; 28 U.S.C. § 2254(d).  "Clearly established Federal law" includes only Supreme Court

28   decisions as of the time the state court renders its decision on the merits of petitioner's claims, not

those decisions as of the time the petitioner's conviction becomes final.  Greene, 132 S.Ct. at 44;

see also Meras v. Sisto, 676 F.3d 1184, 1187 (9th Cir.2012).  Here, the last state court

adjudication on the merits of petitioner's Confrontation Clause claim was the December 18, 2009

opinion of the Superior Court.  The June 17, 2010 opinion of the California Supreme Court

rejected the petition without comment.  Respondent agrees to assume, without conceding, that

this latter dated decision was the operative one for determining what law was clearly established,

and it makes no difference which court's opinion is used as the marker since the clearly

established law at issue here did not change between December 18, 2009 and June 17, 2010.

Accordingly, the undersigned will consider the June 17, 2010 opinion to be the operative

decision for this federal habeas court's review of petitioner's Confrontation Clause claim under

Brecht and AEDPA.  In light of this date, the subsequent decision of the United States Supreme

Court in Bullcoming v. New Mexico, —— U.S. ——, ——, 131 S.Ct. 2705, 2707, (2011), issued

after the California Supreme Court's decision in petitioner's case, has no bearing on this court's

analysis of whether petitioner is entitled to federal habeas relief with respect to his Confrontation

Clause claim.[4]  Id.  Instead, the question before this court is whether the June 17, 2010 decision of

the California Supreme Court[5] with respect to petitioner's Confrontation Clause claim was

contrary to or an unreasonable application of federal law when it was issued in light of the

decisions of the United States Supreme Court in Crawford and/or Melendez–Diaz.[6]

---

[4]  In Bullcoming, the Supreme Court held that the admission into evidence of a forensic lab report
prepared by a non-testifying analyst through the "surrogate testimony" of the analyst's colleague
who had neither performed nor observed the testing procedure violated the Confrontation Clause.
131 S.Ct. at 2710, 2715–16.

[5]  The look-through doctrine would apply here since the California Supreme Court's decision was
issued without comment.  A federal habeas court will "look through" a silent state court denial to
the last reasoned state court decision rejecting the same claim, if such a decision exists, and
subject the underlying decision to § 2254(d) scrutiny.  See Ylst v. Nunnemaker, 501 U.S. 797,
803 (1991).  Therefore, the question is really whether the Superior Court's appellate decision was
contrary to or an unreasonable application of federal law in light of the Confrontation Clause
decisions on the books at that time.

[6]  In Greene, the Supreme Court had left open the question of "[w]hether § 2254(d)(1) would bar
a federal habeas petitioner from relying on a decision that came after the last state-court
adjudication on the merits, but fell within one of the exceptions recognized in Teague, 489 U.S. at
311, 109 S.Ct. 1060, 103 L.Ed.2d 334." 132 S.Ct. at 44 n. *.  See also Teague v. Lane, 489 U.S.
288, 311, 109 S.Ct. 1060 (1989) ("[A] new rule should be applied retroactively if it places certain

10

1   Respondent asserts that if this court finds that the state court was reasonable in finding

2   harmlessness, it need not reach the issue of whether there was error in the first place, but if the

3   court does not so find, then it should find that there was no violation of the Confrontation Clause,

4   and thus no error in the first place.  Petitioner disagrees.

5   I.   Teague v. Lane

6   Respondent argues that Teague precludes relief because precedent at the time petitioner's

7   conviction became final did not require that courts introduce a blood alcohol report with the

8   testimony of the same analyst who performed the testing.  In fact, respondent argues, the state of

9   the law in regard to application of the Confrontation Clause to use of scientific reports was "quite

10  muddled."  Therefore, respondent argues, petitioner cannot meet his burden to show that the rule

11  he seeks is not new.

12  Petitioner responds that the decision of Crawford v. Washington was the rule in place at

13  the time, and the court merely applied the facts of this case to that rule.  The eventual application

14  of Crawford to expert opinion reports was anticipated at the time that opinion was issued,

15  according to petitioner.

16  Before considering the merits of this claim, the court must first address respondent's

17  argument that petitioner's claim that his Confrontation Clause rights were violated by not being

18  able to cross-examine the lab technician who produced the blood alcohol report that was admitted

19  into evidence would constitute an impermissible application of a "new rule."  See Lambrix v.

20  Singletary, 520 U.S. 518, 524, 117 S.Ct. 1517 (1997) (noting that the Teague question is a

21  threshold issue that ordinarily should be considered before reaching the merits); Horn v. Banks,

22  536 U.S. 266, 272, 122 S.Ct. 2147 (2002) (holding that prior to considering the merits, a court

23  "must conduct a threshold Teague analysis when the issue is properly raised by the state");

24  Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948 (1994) (finding that "if the State does argue

25  ////

26

27  kinds of primary, private individual conduct beyond the power of the criminal law" or constitutes
    a "watershed rule[ ] of criminal procedure." (internal quotation marks omitted)). Here, petitioner
28  does not argue that the decision in Bullcoming falls within one of Teague's exceptions.

11

1  that the defendant seeks the benefit of a new rule of constitutional law, the court must apply

2  Teague before considering the merits of the claim.").

3        The non-retroactivity principle announced in Teague "prevents a federal court from

4  granting habeas corpus relief to a state prisoner based on a rule announced after his conviction

5  and sentence became final." Caspari, 510 U.S. at 389.

> "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, supra, 489 U.S., at 301, 109 S.Ct., at 1070. In determining whether a state prisoner is entitled to habeas relief, a federal court should apply Teague by proceeding in three steps. First, the court must ascertain the date on which the defendant's conviction and sentence became final for Teague purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," Graham v. Collins, supra, 506 U.S. [461], at 468, 113 S.Ct. [892], at 898 [122 L.Ed.2d 260 (1993) ], and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution," Saffle v. Parks, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990). Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle. See Gilmore v. Taylor, 508 U.S. 333, 345, 113 S.Ct. 2112, 2113, 124 L.Ed.2d 306 (1993).

16  Id. at 390.  See also O'Dell v. Netherland, 521 U.S. 151, 157, 117 S.Ct. 1969 (1997); Dyer v.

17  Calderon, 151 F.3d 970, 989 (9th Cir.1998).  The two exceptions to Teague's non-retroactivity

18  principle are: (1) when the new rule forbids "punishment of certain primary conduct" or prohibits

19  "a certain category of punishment for a class of defendants because of their status or offense" or

20  (2) the new rule is a "watershed rule of criminal procedure implicating the fundamental fairness

21  and accuracy of the criminal proceeding."  Beard v. Banks, 542 U.S. 406, 416–17, 124 S.Ct. 2504

22  (2004) (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934 (1989)).[7]

23        "A state conviction and sentence become final for purposes of retroactivity analysis when

24  the availability of direct appeal to the state courts has been exhausted and the time for filing a

25  petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied."

26  Caspari, 510 U.S. at 390.  Here, petitioner's conviction became final 90 days after February 11,

27

---

28  [7]  Petitioner does not argue that either exception applies here.  Therefore, the court will not address them.

12

1  2010, when his request for transfer in the Third District Court of Appeal was denied.

2  <u>McMonagle</u>, 802 F.3d at 1096.

3       Under the second step of the <u>Teague</u> analysis, petitioner must show that <u>Crawford v.</u>

4  <u>Washington</u>, 541 U.S. 36 (2004), and <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305,129 S.Ct.

5  2527 (2009), or subsequent United States Supreme Court cases following these cases that existed

6  in 2010, hold that the Constitution requires that the lab technician who performed the test to be

7  available to the defense for cross-examination.

8       Federal courts have decided that both the Constitution and existing Supreme Court

9  precedent do permit such a conclusion.  The majority opinion in <u>Melendez-Diaz</u> specifically

10  stated that its holding that lab reports were considered testimonial statements that implicated the

11  confrontation clause, was *not* the announcement of a new rule, but a "rather straightforward

12  application of our holding in <u>Crawford</u>."  <u>Melendez-Diaz</u>, 129 S.Ct. at 2533.  In <u>Melendez-Diaz</u>,

13  the Supreme Court extended the principle of <u>Crawford</u>, that admission of testimonial statements

14  such as affidavits or custodial examinations, violate the confrontation clause unless the defendant

15  has the ability to cross-examine the declarant, to lab reports which it found to be testimonial.

16       In another district court case based on similar facts and timing, the court discussed the

17  <u>Teague</u> bar in a case where the petitioner's conviction became final after <u>Crawford</u> and

18  <u>Melendez-Diaz</u> but before <u>Bullcoming</u>:

19
>       Petitioner's conviction was final, however, when the Supreme
20      Court issued its decision in <u>Bullcoming v. New Mexico</u>, —— U.S. –
>       ——, ——, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011),
21      concluding that the Confrontation Clause did not permit the
>       prosecution to introduce a forensic laboratory report containing a
>       testimonial certification—made for the purpose of proving a
22      particular fact—through the in-court testimony of a scientist who
>       did not sign the certification or perform or observe the test reported
23      in the certification. Assuming <u>Bullcoming</u> established a rule beyond
>       what was established in <u>Melendez–Diaz</u>, Petitioner's claim still is
24      not barred by <u>Teague</u>. <u>Bullcoming</u> is a "new rule" within the
>       meaning of Teague if "the result was not dictated by precedent" as
25      of the date Petitioner's conviction became final. <u>Teague</u>, 489 U.S.
>       at 301. The "new rule" principle "validates reasonable, good-faith
26      interpretations of existing precedents made by state courts even
>       though they are shown to be contrary to later decisions." <u>Bulter v.</u>
27      <u>McKellar</u>, 494 U.S. 407, 414, 110 S.Ct. 1212, 108 L.Ed.2d 347
>       (1990).

28

1

2

3

4

5

6

7

8

9

> When, as here, a general rule is applied in a new situation, "it can hardly be thought to have created a new principle of constitutional law." Butler, 528 F.3d at 634 (quoting Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir.2007)). In Bullcoming, rather than create a "new rule," the Supreme Court merely applied Crawford's general rule barring testimonial evidence to new sets of facts. As a result, the holding in Bullcoming is better characterized as an application of the Crawford rule of criminal procedure rather than the creation of an entirely "new rule." This position is reinforced by the Melendez–Diaz majority explicitly noting the Court's holding was a "rather straightforward application of our holding in Crawford." Melendez–Diaz, 129 S.Ct. at 2533. Bullcoming was merely an application of the Melendez–Diaz and Crawford holdings to a different set of facts.
>
> Based on the foregoing authority, the Court finds that Petitioner's claim is not barred by Teague.

10

Graham v. Cash, No. CV 11-5723-DDP OP, 2013 WL 3982271, at *11 (C.D. Cal. July 30, 2013).

11

12

13

Petitioner's citation to Chaidez v. United States, 133 S.Ct. 1103, 1107 (2013), supports the position that where existing precedent is applied to a different set of facts, a new rule is not announced for Teague purposes.

14

15

16

17

18

19

20

21

The undersigned agrees with the reasoning of Graham and Chaidez. The superior court in this case merely relied on established law and applied it to the facts of this case. Reading Crawford and Melendez-Diaz together, the superior court's reliance on these cases was reasonable in light of this clearly established law at the time. Bullcoming, although not considered by that court or this one, served to confirm the view of the superior court in this case which had the same facts before it and envisioned where the law was moving in regard to testimonial certification. Petitioner's Confrontation Clause claim in this case is not Teague barred.

22

II.    Collateral Estoppel

23

24

25

26

27

Petitioner criticizes respondent's argument that the state court's finding of a Confrontation Clause violation was error on the grounds that the doctrine of collateral estoppel precludes relitigation of this claim. Petitioner contends that because the state failed to appeal the appellate division's decision reversing the count alleging driving under the influence, the state is foreclosed from raising it now. Petitioner is correct.

28

////

14

Just as the state cannot file a habeas proceeding in federal court to overturn a final, adverse state ruling vacating a conviction,[8] neither can the state (respondent) seek to relitigate a federal issue in habeas which was decided adverse to it in state court proceedings.  Dispositively, the federal habeas statute, section 2254(d), is silent as to the state's ability to contest an adverse state decision or ruling on the merits of an issue.  The entire statute is framed in terms of a *criminal defendant's* ability to seek federal review, and the deference strictures placed on that defendant/petitioner along the way in getting to the merits of a previously decided federal issue which had been decided by the state courts.  The undersigned would be completely re-writing the habeas statute in fabricating an ability of the state to seek its own review.[9][10]

"Under 28 U.S.C. § 1738, federal courts are required to give state court judgments the preclusive effects they would be given by another court of that state."  Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009), citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84, 104 S.Ct. 892 (1984); Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir.2004).

Collateral estoppel or issue preclusion, prohibits the re-litigation of issues decided in a prior proceeding if: (1) the issue is identical to the one decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding was final and on the merits; and (5) the party

---

[8]  Of course, the state may seek Supreme Court review via a petition for certiorari after a final adverse state decision, but this is the final step in the direct review process.

[9]  Moreover, even if the state could seek such federal review, respondent does not suggest why the type of review, unreasonable application of federal law by the state courts, would not apply to it as well as a petitioner.

[10]  The state process in reviewing its own habeas proceedings also indirectly directs the conclusion that respondent is bound by his own court's decision, while petitioner is not.  Only the state has a right to appeal in its state habeas proceedings; a petitioner is relegated to filing a new state petition at each level of review.  See, Cal. Penal Code section 1506; Maes v. Chavez, 792 F.3d 1132 (9th Cir. 2015).  The state's ability to appeal in its own courts in state habeas is no different than its ability to appeal in other contexts.  Indeed, the state courts apply principles of res judicata/collateral estoppel if the state fails to appeal.  People v. Amsbary, 51 Cal. App. 3d 75, 78 (Cal. App. 1975) (superseded by statute on other grounds).  If this is so in state habeas, it stands to reason that the same res judicata collateral estoppel finding would apply even though the decision was issued on direct appeal, as was the case here.  Therefore, if in other contexts it would be estopped from relitigating a state court decided issue in federal courts, it will also be estopped in federal habeas.

1    against whom preclusion is sought is the same or is in privity with the party from the prior

2    proceeding.  Lucido v. Superior Court, 51 Cal.3d 335, 341 (Cal.1990).  "The party asserting

3    collateral estoppel bears the burden of establishing these requirements."  Id.

4           All of the above questions are easily answered in petitioner's favor.  The Confrontation

5    Clause issue (but not the harmless error analysis) was decided in petitioner's favor and is identical

6    to the issue being litigated here; it was actually litigated, even on direct appeal.  The

7    Confrontation Clause issue was finally decided on the merits, and it was final.  Respondent here

8    is clearly in privity with "the People" on direct review.  Respondent is estopped from relitigation

9    of the merits of the Confrontation Clause issue.

10          III.    Constitutional Error

11          Even if the undersigned were to review the merits of the state court decision on the merits

12   of the Confrontation Clause error, he would find in favor of petitioner.  This is so whether the

13   issue is to be decided with AEDPA deference, or de novo, if the state has such a right to this

14   standard.

15          The authority in effect at the time of the state court decision and applied by that court to

16   find a Confrontation Clause error was Crawford v. Washington, 541 U.S. 36 (2004), and

17   Melendez-Diaz v. Massachusetts, 557 U.S. 305,129 S.Ct. 2527 (2009), which was issued after the

18   trial but before the Appellate Division's decision.[11]  Crawford held that testimonial statements of

19   _____

20   [11]  Petitioner's citation to Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct. 2705 (2011), is
     inapposite.  The Supreme Court's decision in Bullcoming was not made retroactively applicable
     to cases on collateral review.  See Tyler v. Cain, 533 U.S. 656, 663, 121 S.Ct. 2478, 2482 (2001)
21   ("[A] new rule is not made 'retroactive to cases on collateral review' unless the Supreme Court
     holds it to be retroactive.");  Greene v. Fisher, 132 S.Ct. 38, 44 (2011) (state court decision must
22   apply precedent in existence at time it renders its decision).  In addition, the Bullcoming court
     noted that it expressed no view on whether the error was harmless, because, unlike the appellate
23   division in this case, the lower court did not reach the issue.  See 131 S.Ct. at 2719, n. 10
     ("[N]othing in this opinion impedes a harmless-error inquiry on remand.");  see also Melendez–
24   Diaz v. Massachusetts, 129 S.Ct. at 2542 n. 14 ("We of course express no view as to whether the
     error was harmless....Today's opinion, while insisting upon retention of the confrontation
25   requirement, in no way alters the type of evidence (including circumstantial evidence) sufficient
     to sustain a conviction.")
26          Likewise, respondent argues that the reasoning of People v. Lopez, 55 Cal.4th 569, 582-
27   84 (2012) applies here; however, this case also post-dates the state court decision finding

28

                                          16

1  a witness who does not appear at trial violate the confrontation clause unless "he was unavailable

2  to testify, and the defendant had had a prior opportunity for cross-examination." Crawford, 541

3  U.S. at 53-54. Melendez-Diaz defined those testimonial statements to include lab reports

4  submitted at trial, and required an analyst to appear and be subjected to confrontation under the

5  Sixth Amendment. Melendez-Diaz, 557 U.S. at 2540. Such was found to be the prosecution's

6  burden. Id. Melendez-Diaz did not address the specific question posed in this case, whether an

7  analyst who had not created the lab report could testify without violating the Confrontation

8  Clause. However, the court did state:

> The documents at issue here, while denominated by Massachusetts
> law "certificates," are quite plainly affidavits: "declaration [s] of
> facts written down and sworn to by the declarant before an officer
> authorized to administer oaths." Black's Law Dictionary 62 (8th
> ed.2004). They are incontrovertibly a "'solemn declaration or
> affirmation made for the purpose of establishing or proving some
> fact.'" Crawford, supra, at 51, 124 S.Ct. 1354 (quoting 2 N.
> Webster, An American Dictionary of the English Language
> (1828)). The fact in question is that the substance found in the
> possession of Melendez–Diaz and his codefendants was, as the
> prosecution claimed, cocaine—the precise testimony the analysts
> would be expected to provide if called at trial. The "certificates" are
> functionally identical to live, in-court testimony, doing "precisely
> what a witness does on direct examination." Davis v. Washington,
> 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)
> (emphasis deleted).

18  Melendez-Diaz, 557 U.S. at 310–11. Therefore, although the Melendez-Diaz court did not

19  answer the question of whether a different analyst could testify as to the lab report completed by

20  another analyst, the aforementioned rationale would seem to respond to this question in the

21  negative. As the state court opined, petitioner did not have the opportunity to cross-examine the

22  analyst who had performed the blood test, and it was the prosecution's burden to make that

23  witness available, not the defendant's burden to call this adverse witness. The production of the

24  analyst's supervisor to respond to cross-examination about the testing process of another analyst

25  whose report was the equivalent of live in-court testimony, did not permit petitioner to cross-

26  examine the witness who had created the live testimony in the form of the lab report.

27  _____

28  confrontation clause error. The undersigned has reviewed the cases cited by the state court in
rendering its decision.

1    Based on the authority in effect at the time, the state court's decision was reasonable in

2    finding that the testimony of an analyst who had not performed the laboratory test was not

3    sufficient to satisfy the Confrontation Clause.  In the alternative, based on the existing Supreme

4    Court precedent, the undersigned would find similarly on a *de novo* standard.

5              IV.    Any Constitutional Error was Harmless

6    On federal habeas review of state court findings of constitutional error, the harmless error

7    standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), applies.[12]  The question

8    is whether the error had substantial and injurious effect or influence in determining the jury's

9    verdict, and resulted in "actual prejudice."  See Brecht, 507 U.S. at 637; Fry v. Pliler, 551 U.S.

10    112, 120, 127 S.Ct. 2321 (2007).  Because the Brecht standard "obviously subsumes" the more

11    liberal AEDPA/Chapman standard, the Ninth Circuit has held "we need not conduct an analysis

12    under AEDPA of whether the state court's harmlessness determination on direct review ... was

13    contrary to or an unreasonable application of clearly established federal law."  Pulido v. Chrones,

14    629 F.3d 1007, 1012 (9th Cir.2010) (*citing* Fry, 551 U.S. at 120).  See also Ortiz v. Yates, 704

15    F.3d 1026, 1038 and n. 9 (9th Cir.2012).  Instead, a federal habeas court is to apply the Brecht test

16    without regard for the state court's harmlessness determination.  Pulido, 629 F.3d at 1012 (citing

17    Fry, 551 U.S. at 121–22); see also Merolillo v. Yates, 663 F.3d 444, 454–55 (9th Cir.2011)

18    (Applying "'the Brecht test without regard for the state court's harmlessness determination.'")

19    The Supreme Court has since clarified that Brecht incorporates the requirements of §

20    2254(d) (AEDPA).  Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015).  Accordingly, if a state court

21    has determined that a trial error was harmless, "a federal court may not award habeas relief under

22    § 2254(d) unless the harmlessness determination itself was unreasonable."  Id. (quoting Fry v.

23    Pliler, 551 U.S. 112, 119 (2007)) (emphasis in original).  "[R]elief is proper only if the federal

24    court has "grave doubt about whether a trial error of federal law had 'substantial and injurious

25    effect or influence in determining the jury's verdict.'"  Davis v. Ayala, 135 S. Ct. 2187, 2197–98,

26    _____

27    [12]  This standard applies regardless of the error standard, if any, applied by the state court.  Fry v.
Pliler, 209 F. App'x 622, 624 (9th Cir. 2006), aff'd, 551 U.S. 112, 127 S. Ct. 2321 (2007), citing
Bains v. Cambra, 204 F.3d 964, 976 (9th Cir.2000).

28

1   (2015) (quoting O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992 (1995)).  The Brecht test

2   will be applied, but with due consideration of the state court's reasons for concluding the error

3   was harmless beyond a reasonable doubt.  Jones v. Harrington, ___ F.3d ___, 2016 WL 3947820,

4   at *9 (July 22, 2016).

5        Petitioner first claims that the appellate department of the superior court, which took

6   petitioner's appeal from his misdemeanor convictions, used an incorrect standard of review, and

7   that the effect of the constitutional error should be considered in regard to the jury in the case, not

8   with respect to a reasonable jury.  He then claims that the harmless error standard was improperly

9   applied.  What he objects to is that the appellate department, despite finding the blood test which

10  should have been excluded to be significant evidence that his blood alcohol level exceeded .08%,

11  nevertheless concluded that notwithstanding this lab test, there was overwhelming evidence of

12  driving while intoxicated to sustain that conviction.  (Res't's Lod. Doc. 2.)  Petitioner argues that

13  the evidence outlined by the appellate department in support fell far short of overwhelming

14  evidence, and that "overwhelming evidence" is not the proper standard of review.  However, as

15  briefed above, the undersigned is not concerned with making a direct ruling of the more exacting

16  non-harmless error conclusion of the state courts.

17       On Brecht review, and with due AEDPA deference, the undersigned concludes that any

18  constitutional error was harmless, i.e., the state appellate court was reasonable in finding no

19  reversible error.  Petitioner is really taking issue with the appellate department's analysis of the

20  evidence remaining and its sufficiency to support a conviction.  However, the officer who stopped

21  petitioner on the night in question testified that at about 3:00 a.m. petitioner came to a sudden

22  stop one hundred feet before the limit line at the stoplight, with no cars in front or behind it.  (RT.

23  110,112-13.)  When the light turned green, the petitioner proceeded very slowly, going about 15

24  miles per hour in a 45 mile per hour zone.  (Id. at 113.)  When the officer's vehicle pulled up next

25  to petitioner's vehicle, he sped up to 33 miles per hour.  (Id. at 115.)  The car then made an abrupt

26  right turn onto a side street.  When the officer approached the car, petitioner rolled the window

27  part way down, but did not answer the officer's question why he stopped so suddenly.  He

28  lowered his head.  (Id. at 118-19.)  When petitioner handed the officer his driver's license, he

1    looked to his right, instead of the direction of the officer on the left.  (Id. at 119.)  At this time the

2    officer smelled a fairly strong odor of alcohol coming from the car.  Petitioner had "red, watery

3    eyes."  When the officer asked if he had been drinking, petitioner did not answer.   When the

4    officer asked if petitioner would step outside the car, he responded, "no."  (Id. at 120.)  The

5    officer then opened the driver's door and told petitioner that he could tell he'd been drinking.

6    When the officer asked how much he had to drink, petitioner responded that he had "some beers"

7    at a friend's.  When asked to get out of the car and walk to the sidewalk, petitioner walked to the

8    rear of his vehicle but was unsteady and slow on his feet, and had difficulty walking.  (Id. at 121-

9    22.)  Petitioner refused the officer's request to move onto the sidewalk and do sobriety tests.  (Id.

10   at 122.)  He mumbled and spoke softly.  (Id. at 123.)  The officer asked petitioner a variety of

11   questions to determine if his actions may have been the result of another physical impairment or

12   other cause, such as an injury, lack of sleep, diabetes, epilepsy, car problems, but petitioner

13   answered all questions in the negative.  (Id. at 124.)  Petitioner admitted to the officer that he

14   started drinking at 8 p.m. but stopped drinking "hours ago."  (Id. at 125.)  When the officer asked

15   him if he felt the effects of the drinks, petitioner did not respond.  (Id. at 125-26.)  Petitioner

16   refused all field sobriety tests, was arrested, and agreed to a blood test.  (Id. at 127.)  At trial, the

17   criminalist, an expert, testified that all of the aforementioned symptoms are consistent with

18   intoxication.  (Id. at 189, 190-94.)  With all of this evidence, it may be concluded that the guilty

19   verdict for Count One was unattributable to the lab test, as respondent suggests.  See Sullivan v.

20   Louisiana, 508 U.S. 275, 279 (1993).

21          It is true that the court instructed the jury on Count One (CVC § 23152(a)), that it could

22   make the determination of guilt based on whether "his or her mental or physical abilities are so

23   impaired that he or she is no longer able to drive a vehicle with the caution of a sober person,"

24   and that the manner of driving is not enough by itself to establish this crime, but is a factor to be

25   considered in light of all the surrounding circumstances.  This instruction also stated that if the

26   People proved beyond a reasonable doubt that the blood alcohol level was .08 percent or higher, it

27   could conclude that defendant was under the influence of alcohol.  (Res't's Lod. Doc. 1 at 179.)

28   There is no evidence as to which portion of this instruction the jury relied on in coming to its

20

1   verdict.  Nevertheless, the state court's reliance on the other evidence, as summarized above, was

2   certainly reasonable.  The state court's ruling on petitioner's claim was not "so lacking in

3   justification that there was an error well understood and comprehended in existing law beyond

4   any possibility for fairminded disagreement."  <u>Richter</u>, 562 U.S. at 103.

5          Petitioner legitimately argues that the erroneous admission of blood alcohol evidence in

6   the form of the lab report overshadowed the jury's verdict.  It could certainly be an important

7   addition to the subjective "appearance" evidence, and could tend to strongly confirm such

8   evidence.  Petitioner points out that the jury was suspicious of the introduction of the lab test,

9   sending a note asking: "Was Dodds the forensic analyst required to be in court?" and "was it

10  denial of the defendant's right to not have Dodds available for questioning?"  ECF No. 1-1, citing

11  RT. 254, CT 11.  RT. at 254-55 does reflect these juror questions.  Petitioner also correctly points

12  out that before the court could respond to these questions, the jury returned a verdict.  RT. at 256.

13         Nevertheless, the state court's finding that any Confrontation Clause error was harmless

14  was not unreasonable because the aforementioned evidence was sufficient by itself to convict

15  petitioner of driving under the influence of alcohol, without regard to the blood alcohol lab report,

16  and a reasonable jury could have come to this same conclusion.  The undersigned disagrees with

17  petitioner's assessment that the officer's observations at the time of the arrest were insufficient to

18  establish driving under the influence, and "could not possibly eradicate the effect of the improper

19  lab results."  The Confrontation Clause error was harmless because it cannot be shown to have "a

20  substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S.

21  at 637.  For these reasons, the petition is denied.

22  <u>CONCLUSION</u>

23         Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

24  issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A

25  certificate of appealability may issue only "if the applicant has made a substantial showing of the

26  denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in this order, a

27  substantial showing of the denial of a constitutional right has been made in this case.

28  ////

1        Accordingly, IT IS HEREBY ORDERED that:

2        1.  Petitioner's application for a writ of habeas corpus is denied; and

3        2.  The court  issues a certificate of appealability with respect to the "substantial and

4    injurious" effect of the Confrontation Clause error.

5    Dated: September 27, 2016

6                                          /s/ Gregory G. Hollows
                                   UNITED STATES MAGISTRATE JUDGE
7

8

9
     GGH:076/mcmo2115.hc
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28